**UNITED STATES of America,
Appellee,**

v.

**David HERNDON, Appellant.**

**No. 246, Docket 75–1233.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 18, 1975.

Decided Nov. 5, 1975.

Phylis Skloot Bamberger, New York City (William J. Gallagher, The Legal Aid Society, Michael Young, New York City, on the brief), for appellant.

Paul B. Bergman, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Josephine Y. King, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE, FEINBERG and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal seeks a remand for resentencing on the basis that the sentencing judge mistakenly believed that the appellant had lied under oath at his trial and that the presentence report contained errors of fact and carried what appellant calls a misleading "ambience." Appellant was originally tried for attempting to rob a bank, 18 U.S.C. § 2113(a),[1] but the jury failed to agree on a verdict. He then pleaded guilty to

---

1. 18 U.S.C. § 2113(a) makes it a crime when any person "by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . . ."

  It is also an offense to enter or attempt to enter any bank "with intent to commit in such bank . . . any felony affecting such bank . . . or any larceny . . . ." *Id.*

a second count on a superseding indictment charging him with entering the bank with "intent" to commit a felony, in violation of the second paragraph of § 2113(a), note 1 *supra*. A judgment of conviction was duly entered in the United States District Court for the Eastern District of New York, Jacob Mishler, *Chief Judge*, and appellant was sentenced to five years' imprisonment. We affirm.

Appellant's first point is that in imposing sentence Judge Mishler erroneously believed that Herndon had lied in insisting that he had not pulled a gun or used intimidation, that the jury had known he was lying and that Herndon had in fact "had a gun and pointed it." It is contended that the judge assumed that Herndon had "put people in fear of their lives," when, in fact, Herndon had testified at his trial that he had neither pulled out the toy pistol found in his possession when he was apprehended outside the bank nor threatened harm to anyone. This, however, was in the face of the testimony of a bank guard who claimed that Herndon had indeed pulled the gun out inside the bank and said, "This is a stick up. Give me all the money or I'll blow your head off."

Our reading of the record reveals that Judge Mishler well remembered what Herndon's testimony was at the trial.[2] At the same time he very clearly did not believe Herndon's testimony. The judge specifically stated, however, that he was not going to increase the sentence because he thought Herndon had lied. Recalling *United States v. Hendrix*, 505 F.2d 1233 (2d Cir. 1974), where the sentence was affirmed despite the express addition of two years to the sentence for perjury during the trial,[3] Judge Mishler explicitly and unequivocally stated: "I am not going to do that here. I am just going to sentence him on the crime that he committed." We do not go behind or beyond the judge's statement; the references to the appellant's supposed lying are easy to explain without assuming that the judge was less than candid. On the first two occasions it was plainly in response to defense counsel's repeated comments on the inaccuracy of the presentence report, note 2 *supra*, and its reference to admitting "attempted robbery" while denying use of the fake gun. It is true that the judge himself brought it up on the third occasion, but this was after a rather long and somewhat argumentative discussion of the factual discrepancies in the presentence report, and there was an extended colloquy along the previous lines. One can only wonder whether at this point the judge was simply ruminating over the seeming inconsistency between admitting to entry of a bank with intent to committing a felony and denying any attempt to rob it, an inconsistency extrapolated from the

---

**2.** Defense counsel challenged the presentence report for saying Herndon had admitted an attempted robbery. The court said: "He testified at the trial under oath, he admitted to intent and nothing else. He was very careful about that." The presentence report was, we think, reasonably consistent with appellant's testimony. It stated as follows:

> *Defendant's Statement.* The defendant admits his guilt claiming that his reasons for committing the attempted robbery were based upon the depression he was feeling after having taken a financial loss of approximately $200 on a dance he had sponsored for the preceding weekend. While claiming that the crime was impulsively committed, the defendant admitted that he was under the influence of cocaine when entering the bank. His description of the entire offense was identical with those details supplied by

the government *except for the statement made by the bank guard that the defendant displayed a gun. The defendant continued to deny such.*
(Emphasis added.)

In continuing to refer to the report's use of the words "the attempted robbery" while not referring to the language we have emphasized above, defense counsel at trial was, we think, distorting matters somewhat.

**3.** This court, per Frankel, *J.*, said:

> While [the theory of defendant's repentance as an individualized sentencing factor] lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia.

505 F.2d at 1236.

rather confusing, overlapping statute, note 1 *supra*.

Appellant's second point is that the sentence was based upon erroneous information which requires that it be set aside under *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), and *United States v. Malcolm*, 432 F.2d 809 (2d Cir. 1970). *See also United States v. Brown*, 479 F.2d 1170, 1173 (2d Cir. 1973). The basis for this claim is that the court stated that the jury "realized that Herndon lied" while the jury had never returned a verdict of guilty or given any other indication of disbelief. But what the judge was saying was that he thought that most of the jury disbelieved Herndon. He was fully aware that the jury had hung, because the very statement of counsel, Ms. Seltzer, immediately prior to this statement by the court was "Your Honor, you know that we had a hung jury." True, Judge Mishler may have been mistaken as to how the jury had stood. He had said, "There were 11 people who disagreed with you," but prosecution and defense counsel each offer a different version of the jury's standing. We do not take these into account, however; as Judge Mishler expressly said, we "hold no stock whatsoever in what jurors believe, not at all, just the verdict."

Finally, appellant points to a number of errors in the presentence report both as to specific facts and, as appellate counsel neatly puts it, in "ambience." The specific facts, other than the "attempted robbery" matter dwelled on at length above, are said to include statements that Herndon had a $35 a week cocaine addiction, only one verifiable prior employment, a brother-in-law with a criminal record, and a mother who had been a prostitute.[4] In fact, counsel pointed out, Herndon had not taken drugs since his arrest (although he had for several years prior thereto), had at least one more readily verifiable prior

job, the man with the criminal record was not his but his sister's brother-in-law, and his mother had not been a prostitute but rather had simply had relationships with several men. But each of these errors was fully called to the sentencing judge's attention by diligent trial counsel and there is no indication whatsoever that in imposing sentence the court relied on any of the inaccuracies referred to.

As to the overall "ambience" of the presentence report—its fairness or "slant"—defense counsel made the court quite aware of the true situation and the court responded with that awareness in the following colloquy at the sentencing hearing:

Ms. Seltzer: . . . Mr. Herndon says that his mother was not a prostitute. That was his description of her. He said that she just fell in and out of love many times.

The Court: I think it is a slur.

You have just pointed out the facts that you feel are inaccuracies.

These two facts are just their way of trying to express an opinion.

Now you have to have some confidence in the ability of the Judge to deal with what is said in the report.

I don't care about how many lovers she had. I did think it was important what kind of environment he grew up in. If I was convinced of this, it would help me to understand his present situation, if I knew what his background was.

. . . . .

I might very well understand his position and I might have given him a lighter sentence because of it. Mr. Herndon doesn't like it because it is a slur on his mother's reputation.

I don't blame him for that. He is entitled to that.

On the inadequacies of the presentence report, probably no one is more fully

---

4. In fact the report did not say that she was a prostitute but that Herndon was "[r]aised in a promiscuous environment," and that Herndon's and his family's description of those years as "uneventful" "seems remarkable."

cognizant of the possibility of such in the Eastern District—whether due to understaffing, lack of time, press of business and the other factors that go into pre-sentence report quality—than the Chief Judge of the district, who deals with these problems in that capacity and on a budgetary level as well as when imposing sentence. We have "some confidence" in the ability of the judge "to deal with what is said in the report."

We feel in short that Judge Mishler, though he might have allowed himself to be drawn somewhat too much into argument with persistent counsel over what had actually happened, imposed sentence on the basis that Herndon had pleaded guilty to a count charging entry of a bank with intent to commit a felony, a serious crime which carries a maximum fine of $5,000 and imprisonment of up to 20 years, by a person whose record shows involvement in six convictions in the previous six years.

Judgment affirmed.