STATE of South Dakota, Plaintiff and Respondent,

v.

Guy Leroy CARSTEN, Defendant and Appellant.

No. 12193.

Supreme Court of South Dakota.

April 6, 1978.

**708**

LeAnn Larson Finke, Asst. Atty. Gen., Pierre, William J. Janklow, Atty. Gen., Pierre, on brief, for plaintiff and respondent.

Joseph Neiles, Asst. Public Defender, Rapid City, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal from the judgment and sentence entered after a plea of guilty to a charge of third degree burglary. We affirm.

Around 1:00 a. m. on August 29, 1976, Rapid City police received a call from a citizen who reported seeing a person tampering with a window in a laundromat in an adjoining building. The informant was unable to identify or describe the person either at that time or at the preliminary hearing. After making the call, the informant again observed the window, and although he did not see the person enter, he noticed that the window was open and a light was on in the building.

Approximately five minutes after the call, a patrol car arrived on the scene. One patrolman entered through the open window while his partner covered the laundromat's front entrance. Appellant was found in an office inside the laundromat with approximately five dollars in dimes in his pocket. There were pry marks on the door to the office; the soap machine had been pried open; and a large pry bar was found inside the building.

After appellant had entered a plea of guilty to the charge of third degree burglary, the court asked him to relate the circumstances of the commission of the burglary. Appellant told the court that he had gone behind the laundromat to go to the bathroom. While there, he discovered an open window and entered the building. Once inside, he discovered that the soap machine had been pried open and that money was sitting on the machine. He took the money. He was then caught inside the building by the police. He denied having any tools in his possession.

At the time set for sentencing, the court again asked appellant to relate what had happened and admonished, "I would suggest you tell me the truth." Appellant repeated essentially the same story he had told at the arraignment.

The court sentenced appellant to sixteen months in the State Penitentiary. The court, in imposing sentence, stated,

"I'm also considering the fact that it's difficult for the Court to accept the version that the Defendant is telling me at this time, as to how things happened, and that to be a proper person for probation or some sort of suspended sentence, it's necessary that I'm convinced that he's being truthful and candid with me. . . ."

The court went on later to state:

"The reason I've sentenced you to the Penitentiary instead of putting you on probation or some type of suspended imposition is that your employment history is not real good, . . . and secondly, I don't believe you've been honest with the Court in relation to what occurred on that particular occasion."

■ Appellant contends that the court erred in relying on its disbelief of appellant's version of the offense as a basis for sentencing. Appellant first argues that SDCL 23–48–19 prohibited the court's consideration of the truth of his statements at arraignment and sentencing. This statute permits a court to receive in aggravation or mitigation only the information specified in SDCL 23–48–16 through 23–48–18. Since SDCL 23–48–17 and 23–48–18 deal with presentence reports, we are concerned here with only SDCL 23–48–16 and 23–48–19. Although this court has not had occasion to define the extent to which these statutes limit the information that a court may consider in sentencing, *State v. Brech,* 84 S.D. 177, 169 N.W.2d 242; *Crowe v. State,* 86 S.D. 264, 194 N.W.2d 234, we have stated in regard to SDCL 23–48–16:

"It is to be observed that the statute permits the court in its discretion to hear the matter summarily and upon such notice as it may direct. The import of this is that it may properly be done without delay or formality." *State v. Greene,* 86 S.D. 177, 187, 192 N.W.2d 712, 718.

We conclude that SDCL 23–48–16 and 23–48–19 did not prohibit the court from considering the truth of appellant's statements concerning the commission of the offense.

■ Appellant next argues that the court's consideration in imposing sentence of its belief in the falsity of appellant's statements violated his constitutional right to remain silent and to testify in his own behalf. In support of this contention, appellant cites *Scott v. United States,* 135 U.S.App.D.C. 377, 419 F.2d 264, and its progeny for the proposition that a sentencing judge is constitutionally prohibited from relying upon his belief that a defendant has lied at trial. We decline to follow the *Scott* line of decisions, however, and conclude that those courts that have rejected the rationale of the *Scott* decision have held that a defendant's lack of candor at trial or at sentencing is among the factors that a trial court may permissibly take into account in imposing sentence. See, e. g., *United States v. Hendrix,* 2 Cir., 505 F.2d 1233; *United States v. Moore,* 4 Cir., 484 F.2d 1284; *United States v. Gamboa,* 5 Cir., 543 F.2d 545; *United States v. Sneath,* 8 Cir., 557 F.2d 149; *Hess v. United States,* 8 Cir., 496 F.2d 936; *United States v. Lustig,* 9 Cir., 555 F.2d 737.

■ This court has consistently recognized the broad discretion of the trial judge in determining the kind and extent of punishment to be imposed within the limits fixed by statute. *State v. Robinson,* 87 S.D. 375, 209 N.W.2d 374; *State v. Williams,* 84 S.D. 547, 173 N.W.2d 889. The character of the defendant as reflected in his conduct before the court is properly considered by a sentencing judge. *United States v. Hendrix, supra.* As Judge Frankel wrote in the *Hendrix* case:

"The appellant urges in substance that to punish him by an enhanced sentence for perjury amounts to a kind of conviction for another crime without the safeguards of indictment and trial. But this ignores the nature of the sentencing process as it exists in our system and of the factors the trial judge may consider in exercising a frequently enormous range of discretion. If there is no clear consensus on these factors, it is certainly clear that they include, as aggravating circumstances, conduct that is not literally 'criminal,' or at least not been duly adjudged criminal in the case in which sentence is being imposed. Prior convictions may cause a heavier sentence, though the defendant has already 'paid' for them. A general course of dissolute, irresponsible, shiftless, or dangerous behavior may be deemed to call for longer incarceration though none of its components are, strictly, 'crimes.' The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it.'

. . . . .

"The effort to appraise 'character' is, to be sure, a parlous one, and not necessarily an enterprise for which judges are notably equipped by prior training. Yet it is in our existing scheme of sentencing one clue to the rational exercise of discretion.

If the notion of 'repentance' is out of fashion today, the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes. . . . Impressions about the individual being sentenced—the likelihood that he will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, the degree to which he does or does not deem himself at war with his society—are, for better or worse, central factors to be appraised under our theory of 'individualized' sentencing. The theory has its critics. While it lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia." 505 F.2d at 1235–36.

Appellant acknowledged that he was guilty of third degree burglary. His version of how he came to be inside the laundromat and how he was the unwitting beneficiary of the largess of an anonymous third-party burglar who had apparently vanished unseen into the night in the space of a few minutes, leaving the fruits of his labors to appellant's happenstance good fortune, would have strained the credulity of the most ingenuous of jurors. That this same account would not meet a receptive ear when told to an experienced trial judge should come as no surprise to anyone. To attempt to elevate the trial court's disappointment in appellant's apparent lack of candor into an issue of constitutional dimensions is to attempt to reduce the role of a sentencing judge to that of a file clerk. One of the factors that entitles a trial court's findings of fact to be given great weight is the opportunity of the trial court to judge the credibility of witnesses. Cf. SDCL 15–6–52(a). We see no reason why a trial judge should be any more restricted in judging a criminal defendant's credibility at a sentencing hearing than in any other type of trial proceeding. To adopt the approach urged by appellant would lead to one of several results: the sentencing judge would be reduced to the role of a credulous simpleton; the sentencing judge would be required to conduct a full adversary mini-trial at which the truth of a defendant's account would be proved or disproved; or the sentencing judge would be required to conceal his disbelief of the defendant's account and very carefully avoid giving as a reason for the sentence imposed the court's belief that the defendant's apparent lack of candor militates against a determination that he is a fit subject for probation rather than incarceration. There may be instances in which a defendant's protestations of innocence of related incriminatory circumstances following his plea of guilty to the principal charge may be worthy of further exploration and proof, but we are not persuaded that this case presents such an instance. This is not a case in which the trial court relied upon demonstrably erroneous information. Cf. *State v. Crowe,* supra. Accordingly, we conclude that the trial court was well within the proper sphere of its sentencing discretion when it elected to reject as untruthful appellant's account of how he happened to be found in the laundromat together with his disavowal of any connection with the burglar tools found at the scene.

Appellant's final contentions involve the presentence report received by the court. Appellant first contends that he was prejudiced by the inclusion in the presentence report of two inaccurate statements. Appellant's counsel was given the opportunity to review the presentence report, however, and both appellant and his counsel availed themselves of the opportunity to rebut the alleged inaccuracies. In *United States v. Herndon,* 2 Cir., 525 F.2d 208, the presentence report incorrectly reported defendant's employment history, accused the defendant of being a drug addict, and branded his mother a prostitute. The reviewing court nevertheless upheld the sentence:

"But each of these errors was fully called to the sentencing judge's attention by diligent trial counsel and there is no indication whatsoever that in imposing sentence the court relied on any of the inaccuracies referred to." 525 F.2d at 210.

See also *State v. Dee,* Iowa, 218 N.W.2d 561; *Thurlkill v. State,* Alaska, 551 P.2d 541. Likewise, absent some showing to the contrary, we will not assume that the trial court was adversely influenced by any inaccurate statement in the presentence report.

■ Appellant also contends that his sentence was tainted by the inclusion in the presentence report of the court services officer's opinions and the opinions of others with whom the officer spoke concerning appellant's character. Nothing in our presentence report statute, SDCL 23–48–18, indicates that opinions of the court services worker must be excluded from the presentence report or that the report must contain only cold, hard facts. SDCL 23–48–18 is substantially similar to Rule 32(c)(2) of the Federal Rules of Criminal Procedure. The United States Supreme Court has stated with respect to Rule 32 that presentence reports "may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged." *Gregg v. United States,* 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442, 446. See also *Davis v. United States,* 5 Cir., 376 F.2d 535; *Farrow v. United States,* S.D.Cal., 373 F.Supp. 113; *State v. Bevins,* 198 Neb. 761, 255 N.W.2d 284. Appellant's contention is without merit.

The judgment is affirmed.

DUNN, C. J., and PORTER and MORGAN, JJ., concur.

ZASTROW, J., deeming himself disqualified, took no part in the decision.