**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Francis Leroy GRADY, Defendant-Appellant.**

**No. 27467**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

March 26, 1970.

Ronald Wallace, Orlando, Fla., Court-appointed, for appellant.

Edward F. Boardman, U. S. Atty., Kendell W. Wherry, Asst. U. S. Atty., Tampa, Fla., for appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

PER CURIAM:

■ Francis Leroy Grady appeals from a conviction in the United States District Court for the Middle District of Florida of the transportation in interstate commerce of a stolen motor vehicle in violation of 18 U.S.C. § 2312.[1] Appellant advances the following specifications of error:[2] (1) The admission of appellant's confession constituted denial of his right to counsel. (2) The trial court erred in admitting appellant's admissions in evidence on the basis of a valid waiver of rights by appellant. (3) The court erred in admitting into evidence admissions of appellant which were the product of his unlawful arrest and unlawful detention. (4) The unnecessary delay in presentation of appellant before a magistrate constituted denial of due process and rendered his confessions inadmissible in evidence. We find no merit in these contentions; appellant's conviction is affirmed.

The record reveals the following facts:[3] During the early part of December 1968, appellant, age thirty-eight, shared his apartment with three juveniles, ages fourteen, fifteen and seventeen. On December 7, 1968, the juveniles stole a 1965 Pontiac convertible in the state of New York. The boys were subsequently joined by appellant and the four fugitives set out for Florida. Appellant drove the car occasionally and bankrolled the odyssey with stolen credit cards. During the course of the trip the appellant and his companions broke open the trunk of the car in search of a gun they thought was inside.

At approximately 11:15 p. m. on December 8, 1968, the city police in Titusville, Florida apprehended the foursome. *Miranda* warnings were given before they were carted off to jail. At about 1:00 a. m. on December 9, 1968, Lieutenant Bean of the Titusville police department attempted to interrogate appellant. After *Miranda* rites had been again administered, appellant stated that he would like the assistance of counsel and that he would answer no questions. Bean responded by terminating the interview.

During the morning of December 9, 1968, appellant was formally charged by state authorities with larceny of an automobile. His state court arraignment occurred at 1:30 that afternoon. The state court again gave *Miranda* warnings and appointed an attorney to aid in appellant's defense.

At approximately 4:00 p. m. on December 9, Special Agent Tully of the Federal Bureau of Investigation interviewed appellant at the county jail. Tully testified that at this time he was not specifically aware of any charges pending against appellant.[4] Prior to questioning, Tully administered the stand-

---

1. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I; and Huth v. Southern Pacific Company, 5 Cir. 1969, 417 F.2d 526, Part I.

2. We have lifted appellant's contentions from his brief. We have done so because his contentions appear to be rather vague and uncertain.

3. We have stated the facts in some detail because three of appellant's four contentions are predicated, to some degree, on a misinterpretation of the facts.

4. The following is from the record:
   Q And you did not know what charges, if any, were pending against him at the time you questioned him?
      *     *     *     *     *
   THE WITNESS: I was not specifically, Mr. Wallace, aware of any charges against Mr. Grady at the time. I was operating under the assumption that he was being held for larceny of an automobile by the Titusville Police Department, whether or not a warrant had actually been issued by the County Solicitor's office I was not aware of this. Normally, when you interview a prisoner in jail you assume they are there on local charges, but the specific nature and the exact charge I can't say.

ard FBI warnings and appellant signed a waiver-of-rights form. During the ensuing interview appellant made several damaging admissions including a statement to the effect that he knew the 1965 Pontiac was stolen before he made the interstate trip. On December 10, 1965, Tully procured an arrest warrant for appellant on the charge of transportation of a stolen vehicle in interstate commerce. Appellant was immediately arraigned before the United States Commissioner in Titusville.

■ Appellant contends that the trial court erred in permitting FBI agent Tully to testify concerning appellant's incriminating pre-trial statements. This testimony was inadmissible, according to appellant, because he had asked a state officer for counsel approximately twelve hours earlier and no counsel had been furnished. The question here is whether the conduct of the city police tainted appellant's admissions to the FBI agent. We are of the opinion that this question must be resolved in the negative.

There is no connection between the two interviews, occurring some twelve hours apart, which would be subversive of constitutional rights. Appellant's brief completely ignores the fact that he signed a waiver of his right to counsel before the FBI agent's interview; that he had been arraigned for a state crime in the interim; and, that agent Tully's interview involved a federal offense. A decision in appellant's favor on this point would be tantamount to holding that an arrestee could not change his mind once he had stated that he would not be interviewed without an attorney. Under the facts and circumstances present here, we must conclude that appellant made the incriminating statements freely and voluntarily with a full understanding of his constitutional rights.

■ Appellant also contends that FBI agent Tully failed to properly inform him of his constitutional rights. Appellant does not argue that the standard FBI warning was defectively presented but that the standard FBI warning is defective in light of Miranda.[5] In substance, the allegedly defective portion states that the suspect must be informed that if he chooses to talk, anything he says "can" be used against him. Appellant insists that Miranda requires "can and will."[6] We think the difference is inconsequential. In addition, during the sixteen hour period immediately preceding Tully's interview, appellant had been given Miranda warnings on three different occasions, the final warning being given by a state court judge only minutes before the FBI interrogation. Appellant was unquestionably aware of his constitutional rights.

■ Appellant argues that the trial court erred in admitting into evidence admissions made by him which were the product of an unlawful arrest and detention. Again, he is referring to the incriminating statements made to agent Tully. We have concluded that at the time the admissions were made there was no unlawful detention. He was in the custody of state officials under a charge of larceny pursuant to a valid and proper arraignment.

■ Appellant's final thrust concerns an alleged delay between arrest and arraignment. The record shows no delay. Agent Tully procured an arrest warrant on the morning of December 10, 1968 at approximately 11:30 a. m. and appellant was taken before a United States Commissioner for arraignment about 30 minutes later.[7]

The decision of the district court is affirmed.

---

5. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Chief Justice Warren, writing for the majority, approved the FBI procedure. Id. at 483, 86 S.Ct. 1602.

6. Id. at 469, 86 S.Ct. 1602.

7. See Sablowski v. United States, 403 F.2d 347 (10th Cir. 1968).